Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 11524
SCOTT M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 252-7400
Facsimile:   (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Tia Williams-Sullivan*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| | Case No. |
| Tia Williams-Sullivan, | **COMPLAINT** |
|                    Plaintiff, | |
|           v. | |
| The Prudential Insurance Company of America; JPMorgan Chase Bank, N.A.; JPMorgan Chase Bank, N.A. Disability Plan, | |
|                    Defendants. | |

Now comes the Plaintiff Tia Williams-Sullivan (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

-1-

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.     At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.     Upon information and belief, JPMorgan Chase Bank, N.A., a New York corporation (hereinafter referred to as the "Company"), sponsored, administered and purchased a group long-term disability insurance Policy (hereinafter referred to as the "Policy") which was issued to the Company in the State of New York, and is fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential").

4.     The specific Prudential group long-term disability ("LTD") insurance Policy is known as Group Contract No. G-50684-DE (the Policy is attached hereto as Exhibit "A").

5.     The Company's purpose in purchasing the Policy was to provide disability insurance and income protection for its employees.

6.     Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the JPMorgan Chase Bank, N.A. Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

7.     At all times relevant hereto, the Plan constituted an ERISA "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8.      Upon information and belief, Prudential functioned as the claim administrator of the Plan and Policy.

9.      Pursuant to the relevant ERISA regulation, the Company, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

10.     Prudential fully insured the Policy and made every decision regarding whether Plaintiff was disabled in her LTD claim.

11.     In administering Plaintiff's claim, Prudential operated under dual and conflicting roles as the decision maker with regard to whether Plaintiff was disabled, and also the payor of benefits if it found she was disabled.

12.     Prudential operated under a structural financial conflict of interest because it fully insured the Policy and made every decision regarding whether Plaintiff was disabled in her LTD claim.

13.     If Prudential found Plaintiff was disabled, it was then financially liable to pay her LTD benefits potentially for the maximum timeframe set forth in the Policy.

14.     The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

***Venue***

15.     Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

***General Allegations***

16.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy, and a "participant" as defined by 29 U.S.C. § 1002(7).

17.     Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to

from the Plan, from any other Company Plan, and/or from the Company itself as a result of being found disabled in this action.

18.     Plaintiff also seeks a determination that she is disabled and meets the "Any Gainful Occupation" definition of disability set forth in the Plan and/or Policy as the evidence she submitted to Prudential supports a determination by the Court that she also meets the Plan and/or Policy's "Any Gainful Occupation" definition of disability and is also entitled to those benefits at this time.

19.     The issue regarding whether Plaintiff meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy is ripe before the Court to adjudicate since the "Regular Occupation" definition of disability timeframe (twenty-four (24) months after she is first entitled to benefits) in the Plan and/or Policy expired on or about August 28, 2019.

20.     On or about August 28, 2019, or soon thereafter, Plaintiff's LTD claim entered into the Policy's "Any Gainful Occupation" definition of disability, meaning that after that date, Plaintiff must prove she meets the Policy's "Any Gainful Occupation" definition of disability to be entitled to LTD benefits.

21.     All of Plaintiff's evidence referenced herein, as well as her evidence contained in Prudential's claim file (i.e. the Administrative Record), proves that she meets the "Any Gainful Occupation" definition of disability in the Policy.

22.     On or about February 27, 2017, after working for the Company as a loyal employee in the occupation of an Investigations Specialist, Plaintiff became disabled from working in that occupation, and also disabled from working in any occupation due to her disabling medical conditions.

23.     Through the present date, due to her disabling medical conditions, Plaintiff has remained continuously disabled and unable to work in any occupation since February 27, 2017.

24.     Following the onset of her disability, Plaintiff filed a claim for short-term disability ("STD") benefits which was administered by, reviewed and approved by Prudential.

25.     After reviewing the evidence supporting Plaintiff's STD claim, Prudential concluded she met the definition of disability set forth in the Company's self-insured STD Plan (attached hereto as Exhibit "B") for the entire (maximum) duration of time STD benefits can be paid, which is for one hundred eight-one (181) days.

26.     Plaintiff's STD benefits have been fully paid by the Company and those benefits have been exhausted.

27.     Following the exhaustion of her STD claim/benefits, Plaintiff remained disabled from working in any occupation and as a result, filed a claim for LTD benefits under the relevant Policy with Prudential.

28.     Prudential made every decision in Plaintiff's LTD claim regarding whether she was disabled and eligible for benefits pursuant to the terms of the relevant Policy.

29.     Upon information and belief, the relevant Prudential LTD Policy's definition of disability governing Plaintiff's LTD claim is as follows:

"You are disabled when Prudential determines that:

- You are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and
- You are under the *regular care* of a *doctor*; and
- You have a 20% or more loss in your *monthly earnings* due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- You are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and
- You are under the regular care of a doctor."

-5-

30.     Plaintiff was **_not represented_** throughout the entirety of Prudential's review of her LTD claim.

31.     In support of her claim for LTD benefits, Plaintiff submitted to Prudential, medical and other evidence which supported her allegation that she met the "Regular Occupation" definition of disability defined in the relevant Policy.

32.     In support of her claim, Plaintiff submitted to Prudential a March 15, 2017 medical questionnaire completed by her board-certified treating family medicine physician who marked "no" when asked whether he believed Plaintiff is "…able to perform work of any kind."

33.     Plaintiff submitted to Prudential April 4, 2017 and May 10, 2017 medical questionnaires completed by the same physician who responded "poor" when asked to describe Plaintiff's "current functional ability."

34.     Plaintiff submitted to Prudential a June 19, 2017 medical questionnaire completed by the same physician who responded "significantly limited" when asked to describe Plaintiff's "current functional ability."

35.     Prudential initially found Plaintiff *was disabled* as defined in its Policy and approved her LTD claim.

36.     Prudential found Plaintiff *was disabled,* entitled to and it paid her LTD benefits from August 28, 2017 through April 30, 2018 (for approximately eight (8) months).

37.     In a letter dated April 13, 2018, notwithstanding Plaintiff's evidence which clearly supports her claim and confirmed that nothing had improved or changed with her disabling medical conditions that would allow her to work, Prudential informed Plaintiff that it was terminating her LTD benefits effective April 30, 2018 after concluding, "…we have determined that you no longer meet the definition of disability as defined in the attached Long Term Disability Policy Provisions.  Therefore, we have terminated your claim."

38.     Plaintiff alleges that Prudential's termination of her LTD claim and benefits when ***nothing improved or changed*** with her disabling medical conditions and work limitations, particularly after it found she was unable to work in her occupation for the entire STD timeframe (using *essentially the same definition of disability*)(*See* Exhibit "B")*,* and for *eight (8) months thereafter* in her LTD claim, is evidence of its conflict of interest at work and that its conflict motivated its terminated of her claim.

39.     Prudential's termination of Plaintiff's LTD claim was unlawful, illogical, implausible, and an abuse of any discretion the Policy may have afforded it.

40.     Plaintiff alleges that Prudential's termination of her LTD claim and benefits when the LTD claim presented *significant financial liability* for the company compared to her STD claim (where it had no liability as those benefits were paid by the Company) is relevant, palpable evidence of its financial conflict of interest at work and is a motivating factor for it terminated Plaintiff's LTD claim.

41.     Prudential's denial of Plaintiff's LTD claim and termination of benefits was motivated by its financial conflict of interest and it desire to save money.

42.     Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed Prudential's April 13, 2018 termination of her LTD benefits.

43.     In support of her claim and appeal, Plaintiff, who was ***not represented***, submitted to Prudential additional reliable, credible, compelling medical and other evidence which supported her allegations she is disabled, that she met and continues to meet the aforementioned definitions of disability set forth in the Policy.

44.     Plaintiff submitted to Prudential a May 10, 2018 office visit note from her board-certified treating family medicine physician who confirmed, "Patient [is] unable to do any type of work at this time."

45.     As part of its review of Plaintiff's LTD claim, Prudential obtained a medical records only "paper review" (meaning the consultant ***never*** spoke to, saw or physically

examined Plaintiff) from a doctor that its third-party vendor retained, named Gianelia F. Guernelli, M.D.

46.     Gianelia F. Guernelli, M.D. was retained by Prudential through its third-party vendor named Managing Care. Managing Claims. (hereinafter referred to as "MCMC").

47.     MCMC is a biased company who operated under a conflict of interest in Plaintiff's claim given its long, extensive business relationship and history of providing biased medical records reviews that favor disability insurance companies such as Prudential and which disfavor claimants, such as occurred in Plaintiff's LTD claim.

48.     On similar facts as the instant case, the Court in *Hertz v. Hartford Life & Accident Ins. Co.*, 991 F. Supp 2d 1121, 1136 (D. Nev 2014), reversed the denial of an ERISA disability claim made by a conflicted insurance company (like Prudential) after it reviewed discovery answers related to alleged conflicts of interest and bias involving the disability insurance company ***and*** its retained third-party vendor, who was retained to find an alleged "independent" doctor to review only Hertz's medical records (*See* Exhibit "C" for *Hertz* decision).

49.     Discovery responses in *Hertz* revealed that **95%** of the time in ERISA disability claims, the third-party vendor and its retained, so called "independent" medical records reviewing doctors opined that a claimant ***was not disabled and was able to work.***

50.     *Hertz* specifically referenced the third-party vendor and its retained doctor's conflicts of interests and bias in its Order:

> "Accordingly, **MLS** [i.e. third-party vendor] ***found that approximately 95% of all claimants could perform some type of work.***
>
> During that same time frame, Dr. Rim reviewed fourteen (14) claims for Hartford…Significantly, of those fourteen (14) claims reviewed, ***Dr. Rim did not find that a single claimant was completely unable to perform any type of work.***
>
> ***Accordingly, Dr. Rim found that 100% of all claimants could perform some type of work.***

The Court finds these statistics strongly suggest that both MLS and Dr. Rim harbored a significant bias towards finding a claimant capable of performing some type of work.

*See Montour*, 588 F.3d at 634 (noting relevance of statistics regarding Hartford's rate of claims denials or how frequently it contracts with the file reviewers it employed in that case to the issue of bias)." (emphasis added).

51.    Similar to Dr. Rim's involvement in *Hertz*, Plaintiff alleges Dr. Guernelli is not an "independent" medical reviewer as Prudential and MCMC have alleged, but he is instead a biased, long-time medical consultant who is repeatedly retained by MCMC, other third-party vendors and other disability insurance companies, such as Prudential.

52.    Due to his long-time relationship with Prudential, MCMC and/or the disability insurance industry, Dr. Guernelli is biased and operated under his own conflicts of interests.

53.    Dr. Guernelli's bias and conflicts of interest led to his selective, one sided and biased review of Plaintiff's evidence and is the reason he deliberately and blatantly de-emphasized and minimized her evidence of disability, so he could render an opinion that the Plaintiff was not disabled so he could favor Prudential and its vendor who retained him.

54.    Dr. Guernelli's bias, conflicts of interest and relationships with the disability insurance industry, including the third-party vendor who retained him, are the reasons he ultimately rendered an opinion that was adverse to Plaintiff and her claim.

55.    Due to his bias and conflicts of interest, Dr. Guernelli has an incentive to protect his own consulting relationships with Prudential, MCMC and/or the disability insurance industry by providing medical records only "paper reviews," where he selectively reviews, ignores, and de-emphasizes evidence that proved Plaintiff was disabled and entitled to benefits, all so he could provide opinions favoring Prudential that it would use to conclude that Plaintiff was not disabled.

56.     Prudential's structural conflict of interest led it to unlawfully accept and use Dr. Guernelli's biased opinions that Plaintiff was able to work because her medical conditions did not create any work restrictions which would preclude her from working.

57.     In a letter dated May 31, 2018, Prudential informed Plaintiff that it was denying the appeal of her claim for LTD benefits after using Dr. Guernelli's opinions to support its erroneous and unreasonable conclusion that, "…we have determined the medical information supports the need for medically necessary restrictions and limitations but would not preclude you from performing the material and substantial duties of your regular occupation as of May 1, 2018, onward."

58.     Prudential's denial of Plaintiff's claim based on Dr. Guernelli's biased opinions as set forth in his medical records only "paper review" is an abuse of discretion and an ERISA procedural violation because in accepting his opinions, among other procedural violations, Prudential failed to act as her fiduciary and failed to provide a "full and fair" review.

59.     In *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003), the Supreme Court warned about biased, conflicted insurance company retained doctors, such as Dr. Guernelli, who are repeatedly retained by disability insurance companies and/or third-party vendors, such as MCMC, to review disability claims by noting, "Nor do we question the Court of Appeals' concern that physicians retained by benefits plans may have an 'incentive to make a finding of not disabled' in order to save their employers money and to preserve their own consulting arrangements."

60.     Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed Prudential's May 31, 2018 denial of her LTD claim.

61.     In support of her claim and appeal, Plaintiff submitted to Prudential additional reliable, credible, compelling medical and other evidence which supported her allegations that she is disabled and met the aforementioned definitions of disability set forth in the Policy.

-10-

62.    Upon information and belief, as part of Prudential's review of Plaintiff's claim, it obtained ***two (2) addendum/second*** medical records only "paper reviews" of Plaintiff's claim from Gianelia F. Guernelli, M.D.

63.    Pursuant to 29 C.F.R § 2560.503-1(h)(3)(v), Prudential knowingly and blatantly violated ERISA by committing a procedural violation in retaining the same reviewing medical professional, Dr. Guernelli, to review Plaintiff's claim at *two separate levels of its review.*

64.    As alleged *supra,* Dr. Guernelli is a long time medical consultant and medical records reviewer for Prudential, MCMC and/or the disability insurance industry and has an incentive to protect his own consulting relationships with Prudential, MCMC and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Prudential and which supported the denial of Plaintiff's LTD claim.

65.    On June 18, 2018, Dr. Guernelli posed three (3) specific questions to Plaintiff's board-certified treating family medicine physician who completed the March 15, 2017, April 4, 2017, May 10, 2017 and June 19, 2017 medical questionnaires and wrote the May 10, 2018 office visit note, which all supported Plaintiff's inability to work and her claim for LTD benefits, as referenced *supra.*

66.    In a June 19, 2018 response, Plaintiff's physician responded "no" to Dr. Guernelli's question of whether he "[agreed] with [Dr. Guernelli's] assessment on the claimant's restrictions and limitations."

67.    In a letter dated July 12, 2018, notwithstanding the evidence that clearly supported Plaintiff's disability claim and confirmed nothing had improved or changed in her disabling medical conditions which would allow her to work in any occupation, Prudential informed Plaintiff it was denying her LTD benefits after it concluded, "…the medical

information supports you would be able to perform the material and substantial duties of your regular occupation…"

68.     Prudential's statement in its July 12, 2018 denial that "there was no *objective documentation or evidence*…" is clear evidence of an ERISA violation and of Ninth Circuit case law because Prudential unlawfully imported a new requirement into its Policy that Plaintiff had to prove her claim by meeting the definitions of disability with "objective" documentation or evidence, when the Policy did not require her to prove her claim with objective, or any type of specific evidence.

69.     Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed Prudential's July 12, 2018 denial of her LTD claim/benefits.

70.     In support of her claim and appeal, Plaintiff, who was ***not represented***, submitted to Prudential additional reliable, credible, compelling medical and other evidence which supported her allegations that she is disabled and met the aforementioned definitions of disability set forth in the Policy.

71.     Plaintiff submitted a September 17, 2018 Physician's Physical Therapy Initial Evaluation from her board-certified treating internal medicine physician who confirmed Plaintiff was, "still on disability…"

72.     Upon information and belief, as part of Prudential's review of Plaintiff's claim, it obtained a ***third addendum*** medical records only "paper review" of Plaintiff's claim from Gianelia F. Guernelli, M.D.

73.     Pursuant to 29 C.F.R § 2560.503-1(h)(3)(v), Prudential knowingly and blatantly violated ERISA regulations by committing a procedural violation in retaining the same reviewing medical professional, Dr. Guernelli, to review Plaintiff's claim at *three separate levels of its review.*

74.     In a letter dated October 15, 2018, notwithstanding Plaintiff's aforementioned evidence which clearly proves she met and continues to meet both definitions of disability in

-12-

the Policy, and that her medical conditions had not improved since Prudential found she was disabled on or about February 27, 2017, it notified her it rendered a final denial in her LTD claim.

75.   In its final denial dated October 15, 2018, Prudential notified Plaintiff she exhausted all administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

76.   Prudential's structural conflict of interest led it to again unlawfully accept and use Dr. Guernelli's biased opinions that Plaintiff did not have work related restrictions so it could in turn, deny her claim for LTD benefits.

77.   Prudential's denial of Plaintiff's claim based on Dr. Guernelli's biased opinions as set forth in his medical records only "paper review" is an abuse of discretion and an ERISA procedural violation because in accepting those opinions, it did not comply with ERISA which required it to afford her with a "full and fair" review.

78.   The biased, selective, cherry-picked and unfavorable review of Plaintiff's LTD claim by Prudential and Dr. Guernelli ***directly resulted*** from their conflicts of interest as referenced herein, as well as Dr. Guernelli's desire to protect his consulting arrangements and business relationships with MCMC, other third party vendors, Prudential and the disability insurance industry in general.

79.   Prior to rendering its October 15, 2018 final denial in Plaintiff's LTD claim, Prudential unlawfully never disclosed or shared with Plaintiff, or her treating medical professionals (who had all examined/evaluated her personally and opined she was disabled and unable to work in any occupation), the medical records only "paper review" authored by its reviewing medical professional, Dr. Guernelli.

80.   Prudential's ERISA and Ninth Circuit ***duty*** to disclose during its review Dr. Guernelli's report to Plaintiff and her treating medical professionals for their review and response was critical in order for Prudential to provide her with a "full and fair" review.

81.     Prudential's ERISA and Ninth Circuit **_duty_** to disclose Dr. Guernelli's report during its review to Plaintiff and her treating medical professionals for their review and response was critical for Prudential to engage her in the "meaningful dialogue" required as part of a providing a "full and fair" review.

82.     Prudential's ERISA procedural violation in failing to disclose Dr. Guernelli's report and to engage Plaintiff in any meaningful dialogue led to it failing to obtain a complete and accurate picture of Plaintiff's disabling medical conditions, her resulting symptoms and limitations which corroborate her credible allegations that she is unable to work in any occupation.

83.     An ERISA fiduciary making any effort to comply with ERISA's regulations and the **_duties_** it owes to Plaintiff under Ninth Circuit law, would have disclosed Dr. Guernelli's report to her and her treating medical professionals so they could respond and in the process, allow Plaintiff to perfect the record so her LTD claim could be approved rather than denied.

84.     If Prudential had disclosed Dr. Guernelli's report to Plaintiff and her medical professionals, they would have been afforded an opportunity to participate in the review to perfect her claim and Prudential would have engaged her in the "meaningful dialogue" required by Ninth Circuit law and ERISA during a time when it mattered – before Prudential rendered its final denial.

85.     If Prudential had engaged Plaintiff in a dialogue regarding any alleged deficiencies *it believed* existed in her claim before rendering its final denial, she and her treating medical professionals could have perfected the claim file (i.e. the Administrative Record) as required by federal law, so Plaintiff's LTD claim and benefits could have been approved rather than terminated and later denied.

86.     As set forth by Prudential in its October 15, 2018 final denial, the reasons and deficiencies it alleged that existed in Plaintiff's evidence/claim were not inconsequential *to*

*Prudential,* they were the rationale and basis for *why* it terminated and later denied her LTD claim.

87.     Prudential's failure to provide Plaintiff and her treating and/or evaluating medical/vocational professionals with an opportunity to respond to its reviewing medical professional's report is an ERISA procedural violation, and precluded Prudential from providing Plaintiff with a "full and fair" review.  *See* 29 C.F.R. § 2560.503-1.

88.     Prudential's action in not providing Dr. Guernelli's report to Plaintiff is identical to the conflicted insurance company's claim tactics that were rejected in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer.  The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' ***A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement***" (bold and emphasis added).

89.     On October 31, 2019, after retaining undersigned counsel, pursuant to the ERISA fiduciary duty it owes Plaintiff, she requested for Prudential to re-open her LTD claim and submitted ***new and material*** medical and non-medical evidence for its consideration in her LTD claim.

90.     The evidence submitted by Plaintiff with her October 31, 2019 letter should ***all*** be in Prudential's Administrative Record (i.e. claim file), but for Prudential's failure to comply with ERISA by providing her with a "full and fair" review.

91.     The evidence submitted by Plaintiff with her October 31, 2019 letter should ***all*** be in Prudential's Administrative Record (i.e. claim file), but for Prudential's failure to act as her ERISA fiduciary, as well as its failure to investigate and administer the claim "solely in her best interests" as required by 29 U.S.C. § 1104(a).

92.     In her October 31, 2019 letter, Plaintiff informed Prudential of the serious issues she had with Dr. Guernelli's opinions/medical reports which raised legitimate

questions about the thoroughness of Dr. Guernelli's reports/opinions as well as with his independence and bias as documented in his reports.

93.     In her letter dated October 31, 2019, Plaintiff reminded Prudential of its fiduciary duty pursuant to 29 U.S.C. § 1104(a)(1), as well as *Metro. Life Ins. Co., v. Glenn,* 554 U.S. 105, 115 (2008) which holds Prudential to a high legal standard in the administration of her claim:

> ERISA imposes higher-than-marketplace quality on standards on insureds. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1)…

94.     In her October 31, 2019 letter, Plaintiff also summarized for Prudential her compelling medical, vocational and lay-witness evidence which proved she has been disabled since October 6, 2017 and that she remains "Disabled" as that term is defined in the Policy.

95.     In support of her claim, Plaintiff submitted a June 24, 2019 narrative letter from her long-time treating board-certified family medicine physician who after reviewing Dr. Guernelli's ***third*** medical records only "paper review," confirmed it was his opinion that, "[Plaintiff] has clearly been unable to work in her occupation or in a similar occupation since 2/2017.  She continued to be completely unable to work in April of 2018, and remains unable to work to this day."

96.     Plaintiff's same physician also confirmed in his narrative letter that, "[Plaintiff] is unable to return to her own job, or even a similar sedentary job.  I suspect she will remain in this state of disability indefinitely…"

97.     Plaintiff submitted a July 21, 2019 narrative letter from her treating board-certified internist who after reviewing Dr. Guernelli's ***third*** medical records only "paper review" confirmed, "My professional medical opinion is that [Plaintiff] is not able to work in any job and is disabled as required by both of Prudential's definitions of disability that are provided.  Further, [Plaintiff] has not been able to work in any job since February 2017."

98.     Plaintiff also submitted to Prudential a Functional Capacity Evaluation report dated February 15, 2019, wherein after an extensive three (3) hour clinical interview, physical examination and simulated objective workplace testing which produced ***valid*** test results, the qualified physical therapist concluded that, "…[Plaintiff] is UNABLE to perform the physical demands or material duties of her past work as a Fraud Investigator or any other work including other types of SEDENTARY work on a regular and consistent basis." (Original emphasis).

99.     In response to Dr. Guernelli's opinions as set forth in his medical records only "paper review," the physical therapist stated, "[Dr. Guernelli's] opinions regarding [Plaintiff's] work tolerance…lack merit and do not correlate with the medical information in her case."

100.     Further supporting her claim, Plaintiff submitted a Vocational Assessment (evaluation) dated September 18, 2019 from a certified vocational expert, who after personally interviewing Plaintiff and reviewing the relevant evidence in Plaintiff's claim, along with the "Regular Occupation" and "Any Gainful Occupation" definitions of disability set forth in the Policy, concluded, "…Based on a review of the evidence in [Plaintiff's] claim as well as my interview with her, it is clearly evident that her medical conditions and overall inability to work medically and vocationally in her regular occupation and in my gainful occupation has only deteriorated since she last worked..."

101.     Plaintiff also submitted to Prudential updated medical records from each of her treating medical professionals which confirmed that she remained disabled as that term is defined in Prudential's Policy and that her disabled medical conditions had not improved she became disabled and last worked.

102.     Plaintiff also submitted to Prudential a list of her current medications, as well as the adverse side effects those medications cause her to experience and how those side effects preclude her from being able to work in any occupation.

-17-

103.    Plaintiff also submitted to Prudential her September 16, 2019 sworn affidavit where she confirmed that she remained unable to work in any occupation and that she had been disabled due to her disabling medical conditions and the limitations they imposed since she last worked on February 27, 2017.

104.    Plaintiff confirmed in her affidavit that her disabling medical conditions, as well as the resulting disabling symptoms and limitations they cause her to experience had not improved in any manner that would allow her to return to any type of work or occupation since February 27, 2017.

105.    Plaintiff also submitted to Prudential three (3) other sworn affidavits authored by her cousin and two (2) long-time friends, who all confirmed Plaintiff is unable to work in any occupation and that her disabling medical conditions have not improved in any meaningful way since the date she originally became disabled, February 27, 2017.

106.    In her October 31, 2019 letter to Prudential, Plaintiff informed it that Dr. Guernelli is biased because he is repeatedly retained by the disability insurance industry and/or Prudential to perform the sort of medical records only "paper reviews" he was retained to perform in Plaintiff's claim.

107.    In her October 31, 2019 letter, Plaintiff informed Prudential that Dr. Guernelli's extensive relationship with the disability insurance industry, including with Prudential, resulted in his extreme bias in favor of Prudential and against disabled individuals such as the Plaintiff.

108.    Prudential took no action to investigate Dr. Guernelli's bias and conflicts of interest in performing medical records reviews such as the one he performed in Plaintiff's claim.

109.    All of the reliable evidence Plaintiff submitted to Prudential consistently proves she is unable to work in *any occupation* and that she meets both definitions of disability set forth in the Policy.

110.   In a letter dated November 1, 2019 (*See* Exhibit "D"), in spite of Plaintiff's request that it re-open her disability claim, Prudential informed her that its October 15, 2018 decision was final and "therefore, we are unable to accept any further appeals."

111.   In a letter dated January 13, 2020, Plaintiff requested for a ***second*** time that Prudential re-open her claim and reminded it of its fiduciary duty to do so pursuant to 29 U.S.C. § 1104(a)(1) and the high legal standard *Glenn* imposed on Prudential to act in her best interests.

112.   Following Plaintiff's initial application for long-term disability benefits, at Prudential's instruction and request in a November 7, 2017 letter (*See* Exhibit "E"), she applied for Social Security disability benefits from the Social Security Administration (hereinafter referred to as the "SSA").

113.   Prudential informed Plaintiff in its November 7, 2017 letter that if she did not file a claim for SSA disability benefits, it would reduce her LTD benefit amount by an estimate of what her SSA disability benefit amount may be, even if she was not receiving any benefits from SSA.

114.   Prudential requiring Plaintiff to file a claim for Social Security disability benefits when it was aware that federal law, specifically SSA law, required that Plaintiff be unable to work in any occupation in order to qualify for SSA benefits is highly probative evidence that Prudential *believed* Plaintiff meet SSA's more difficult to meet definition of disability which is defined as being unable to work in any occupation that may exist in the national economy.

115.   Prudential's belief Plaintiff was entitled to SSA disability benefits is documented in its November 7, 2017 letter that states if she did not apply for SSA disability benefits, then Prudential would begin reducing her LTD benefit amount by a monthly amount it *estimated* she would receive from SSA even though she would not actually be receiving a disability benefit from SSA.

116.    On September 18, 2019, the SSA and an Administrative Law Judge (hereinafter referred to as the "ALJ") held a hearing in Plaintiff's claim.  Plaintiff appeared at the SSA hearing before the Judge and testified about her disabling medical conditions and her severe symptoms. Plaintiff also testified about the disabling functional limitations she experiences which preclude her from functioning on a daily and/or working in any occupation.

117.    After conducting a full hearing on September 18, 2019 and carefully listening to Plaintiff's testimony, along with reviewing much of the same evidence Prudential previously reviewed, the ALJ concluded that since October 1, 2018, Plaintiff has been disabled and unable to work in any gainful occupation that may exist in the national economy..

118.    The decision from the SSA ALJ confirms that he found at the present time and dating back to October 2018, due to disabling medical conditions, Plaintiff has been unable to engage in engage in any work, even *Sedentary* work.

119.    In her January 13, 2020 letter, Plaintiff notified Prudential that her Social Security disability claim was approved following her hearing with the SSA ALJ.

120.    On January 13, 2020, to afford Prudential the opportunity to review *all of Plaintiff's evidence the ALJ and SSA considered in her claim*, she submitted the ALJ's November 8, 2019 Social Security "Notice of Decision – Fully Favorable," as well as a complete copy of her Social Security disability claim file from SSA's hearing office.

121.    SSA's approval of Plaintiff's disability claim is highly relevant and probative evidence for this Court to consider regarding the unreasonableness, unlawfulness and implausibility of Prudential's termination of her benefits and denial of her claim.

122.    Prudential's failure to re-open Plaintiff's LTD claim and consider the SSA ALJ's decision and SSA claim file is evidence of its unlawfulness and unreasonableness and that Prudential did not act as her ERISA fiduciary and did not afford Plaintiff a "full and fair" review as required by ERISA.

123.   The SSA ALJ's approval of Plaintiff's SSA claim is highly probative and relevant evidence of Plaintiff's disability because unlike Prudential, who is a conflicted fiduciary, SSA's ALJ is a truly independent, unconflicted fact finder and decisionmaker.

124.   The SSA ALJ's approval of Plaintiff's claim after hearing her testimony and reviewing the evidence in her SSA claim file that she submitted to Prudential, is the decision that an unconflicted and impartial decisionmaker "would have or should have" made in Plaintiff's LTD claim.

125.   The SSA ALJ's approval of Plaintiff's SSA claim is highly probative and relevant evidence of Plaintiff's disability because SSA's definition of disability is *significantly more difficult* for Plaintiff to meet when compared to the "Regular Occupation" or "Any Gainful Occupation" definitions of disability set forth in Prudential's Policy.

126.   SSA's definition of disability is ***significantly more difficult*** to meet than Prudential's "Any Gainful Occupation" definition of disability because SSA law defines "Disability" as an individual's "inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment" that is of "such severity [the claimant] . . . cannot, considering his age, education, and work experience, engage in ***any other kind of substantial gainful work*** which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives." *See* 42 U.S.C. § 423(d)(1)(A), (2)(A)(emphasis added) and *Montour v. Harford Life & Accident Ins. Co.* 588 F.3d 623, 636 (9th Cir. 2009).

127.   In contrast to SSA's definition of disability reference in paragraph 126, according to Prudential's "Any Gainful Occupation" definition of disability, in her LTD claim, Plaintiff could meet that definition of disability in Prudential's Policy and be entitled to LTD benefits even if she could work in an occupation and earn as much as ***"80%"*** of her pre-disability indexed monthly earnings.

128.    Prudential's failure to re-open Plaintiff's claim so it could review the submitted she submitted, such as the ALJ's favorable decision, her SSA claim file and the other credible, reliable evidence she submitted to Prudential, is clear evidence that Prudential failed to act as her ERISA fiduciary and failed to administer the LTD claim **_solely_** in her best interests.

129.    Prudential's failure to re-open Plaintiff's claim so it could review the evidence she submitted, such as the ALJ's favorable decision, her SSA claim file, and the other credible, reliable evidence she submitted to Prudential, is clear evidence Prudential did not provide her with a "full and fair" review as required by ERISA.

130.    Prudential's failure to re-open Plaintiff's claim so it could review Plaintiff's evidence (and if necessary, any other evidence to perfect the record) violates its ERISA and Ninth Circuit **_duties_** to investigate the claim and engage her in the "meaningful dialogue" this circuit requires in order to affords her with the opportunity to perfect her claim so it could be approved.

131.    Prudential's failure to re-open Plaintiff's claim so it could admit and consider the evidence she submitted following its final denial is a failure to investigate and failure to engage her in the "meaningful dialogue" required by *Montour v. Hartford Life & Accident Ins. Co.* 582 F.3d 933 (9th Cir. 2009) and *Salomaa.*

132.    In a letter dated January 14, 2020 (*See* Exhibit "D"), Prudential again refused to re-open Plaintiff's claim so it could consider the evidence she submitted.  The evidence Plaintiff submitted **_should have already been in_** her claim file (i.e. the Administrative Record) and reviewed by Prudential before it issued its final denial.

133.    In its letter dated January 14, 2020, Prudential's reason for deliberately not re-open Plaintiff's claim is due to its allegation that "…we are unable to accept any further appeals."

134.   Prudential never explained to Plaintiff how its decision to not re-open her claim was consistent with its ERISA fiduciary duty to administer the claim ***"solely"*** in her best interests. *See* 29 U.S.C. § 1104(a).

135.   Prudential's October 15, 2018 final denial, its October 31, 2019 and January 14, 2020 letters are clear evidence it willfully breached its fiduciary duty to Plaintiff by failing to administer the claim in her best interests, failing to investigate, failing to engage her in any dialogue, and failing to provide her with a "full and fair review" as required by ERISA. *See* 29 C.F.R. § 2560.503-1.

136.   Prudential's failure to re-open Plaintiff's claim after her ***two requests*** so it could consider the evidence she submitted and that she asked it to admit to its claim file (i.e. Administrative Record), is palpable evidence of its structural conflict of interest and desire to save money by not paying Plaintiff the benefits she is owed.

137.   Prudential's failure to re-open Plaintiff's claim after her ***two requests*** so it could consider the evidence she submitted and that she asked it to admit to its claim file (i.e. Administrative Record) is an abuse of any discretion the LTD Policy may have afforded it.

138.   The reason Plaintiff's requested for Prudential to re-open her LTD claim, and her reason for submitting all of the evidence she did following its final denial was so she and Prudential could "re-create" the claim file (i.e. Administrative Record) and claim process Prudential was required to afford her if it had complied with ERISA and provided her with a "full and fair" review of her claim before it issued its final denial.

139.   The evidence Plaintiff submitted to Prudential with the aforementioned letters and asking it to re-open her claim should be part of the Administrative Record and considered by this Court in its determination regarding whether Plaintiff meets either the "Regular Occupation" and/or "Any Occupation" definitions of disability set forth in the LTD Policy.

140.   Plaintiff respectfully requests for the Court to admit and consider all the evidence not only in her claim file (i.e. Administrative Record), but also the evidence she

-23-

submitted to Prudential following its final denial pursuant to ERISA and *Abatie*, 458 F.3d at 973, which permit the Court to consider her evidence so it can remedy Prudential's ERISA procedural violations and afford her the "full and fair" review she never received from Prudential.  Abatie allows the Court to consider all of evidence Plaintiff submitted following Prudential's final denial:

> Even when procedural irregularities are smaller, though, and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct.

141.    Due to Defendant's ERISA procedural errors as set forth above, Plaintiff plans to file a motion and seek an Order permitting her to supplement the claim file (i.e. Administrative Record), with the evidence she submitted to Defendant after its final denial issued on October 15, 2018.  Plaintiff will file her motion and seek an Order so she is afforded an opportunity to re-create the administrative process as it should have been pursuant to ERISA and *Abatie.*

142.    The Court granting Plaintiff's motion to supplement the Administrative Record (i.e. claim file) will allow all of the evidence Plaintiff submitted to Defendant following its final denial to be admitted into the Administrative Record, and to be considered by the Court in its merits determination regarding whether Plaintiff is entitled to disability benefits.

143.    During its reviews of Plaintiff's claim, Prudential both negligently and intentionally committed numerous ERISA procedural violations identified herein that allowed it to unlawfully terminate and then deny Plaintiff's LTD claim and benefits.

144.    Throughout the entirety of Plaintiff's claim and prior to the date she filed this Complaint, Prudential's ERISA procedural violations include, but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing all of Plaintiff's reliable evidence which proves she met the "Regular

Occupation" and "Any Gainful Occupation" definitions of disability in the LTD Policy and is entitled to benefits.

145.    In evaluating Plaintiff's claim, Prudential owed her a fiduciary duty and had an obligation pursuant to ERISA to administer her claim "solely in [her] best interests…" which it failed to do. [1]

146.    Due to all of the aforementioned conflicts of interest and bias which Plaintiff alleges not only influenced, but also resulted in the termination and denial of her claim, Prudential violated ERISA and its fiduciary duty because it unlawfully and implausibly administered the claim "solely" in its *own* best interests, not hers.

147.    Throughout the entirety of Plaintiff's claim prior to the date she filed this Complaint, Prudential's failure to investigate the claim and to engage in any dialogue, and failure to ask for and/or obtain the evidence *it believed* was necessary and critical to cure any deficiencies *it believed existed* so Plaintiff could perfect her claim and have it approved is particularly egregious given the nature and severity of her disabling medical conditions which include objective medical findings and subjective disabling complaints which prove she continues to be disabled as those terms are defined in the LTD Policy.

148.    Plaintiff alleges Prudential's review was neither full nor fair, and violated ERISA, specifically, 29 U.S.C. § 2560.503-1, for many reasons including, but not limited to: failing to act as Plaintiff's ERISA fiduciary by not re-opening Plaintiff's claim so it could consider the evidence it failed to obtain and review prior to its final denial; failing to

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

-25-

admit the evidence Plaintiff submitted following its final denial; violating ERISA by retaining the same reviewing medical professional, Dr. Guernelli, to review Plaintiff's claim at *three separate levels of review;* by unlawfully inserting a Policy requirement that Plaintiff must prove her claim with "objective" documentation or "objective" evidence when there is no requirement that she do so in the Policy; by abdicating and outsourcing its ERISA fiduciary duty by retaining a biased third-party vendor/company (MCMC) to be involved in the review of Plaintiff's claim; by failing to credit Plaintiff's credible, reliable evidence which includes but is not limited to, giving significant weight to the SSA ALJ's decision (and the evidence in her SSA claim file) and the approval of Plaintiff's SSA claim; by abdicating and outsourcing its ERISA fiduciary duty in retaining a biased third-party vendor/company (MCMC) who in turn retained a biased medical consultant (Dr. Guernelli) to review only Plaintiff's medical records and render opinions in her claim; by failing to have Plaintiff's claim reviewed by a truly independent third-party vendor and independent medical consultant; by de-emphasizing, cherry picking and selectively reviewing Plaintiff's evidence in an effort to terminate her benefits and later deny her claim when all her evidence proved she met and continues to meet both the "Regular Occupation" and "Any Gainful Occupation" definitions of disability in the Policy; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all of the evidence submitted by her and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim and the approval of her claim; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms and limitations; by failing to consider the *combined and aggregate effect* that all of her disabling medical conditions and resulting limitations documented in her evidence had and have on her ability to work in any occupation; by failing to engage Plaintiff in a "meaningful dialogue" so she and her treating and/or evaluating medical/vocational professionals could respond to Prudential's reviewing medical consultant/professional's (Dr. Guernelli) report; by precluding Plaintiff from being able to submit the necessary evidence to

perfect her claim so it could be approved; and by failing to consider the adverse impact the side effects Plaintiff's medications have had, and continue to have on her ability to engage in her "Regular Occupation" or "Any Occupation" as that term is defined in Policy.

149.    Plaintiff alleges one reason Prudential provided an unlawful review that was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest which manifested as a result of Prudential's roles as the decision maker and payor of benefits.

150.    Prudential's conflict of interest provided it with a financial incentive to terminate and then deny Plaintiff's LTD claim, because every dollar it saved by not paying Plaintiff the disability benefits she is entitled to now represents a monetary profit for Prudential.

151.    Prudential's self-serving actions are similar to the conflicted and unlawful tactics and review the insurance company provided the plaintiff in *Salomaa,* where the Court referenced the insidious nature of Prudential's conflicts by noting, "The plan with a conflict of interests also has a financial incentive to cheat."

152.    Prudential's unlawful review, as well as its dishonest failure and refusal to re-open Plaintiff's claim when Plaintiff notified it of the litany of ERISA procedural violations it committed throughout the entirety of her claim is similar to tactics the conflicted insurance company did in *Salomaa* by "cheating" her out of the disability benefits she is entitled to as Mr. Salomaa was cheated out of disability benefits by his conflicted insurance company.

153.    Regardless of the standard of review, discretionary or *de novo*, Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts of interest, its bias and business relationships referenced herein, as well as the conflicts of interest of any of its third-party vendor(s)(including but not limited to MCMC) hired by Prudential and any medical professional (including but not limited to Dr. Guernelli) employed by and/or retained by Prudential or its third-party vendor(s) to review Plaintiff's claim.

154. Regardless of the standard of review, discretionary or *de novo*, Plaintiff is entitled to discovery regarding any individual, medical professional or otherwise, who participated in the review and administration of her claim.

155. Regardless of the standard of review, the Court should allow discovery so it can properly weigh and consider the nature, extent and effect that *any conflict of interest* and/or any ERISA procedural violation had in influencing or causing Prudential's decision to terminate and then later deny Plaintiff's LTD claim.

156. Plaintiff asserts that any third-party vendor (including but not limited to MCMC) retained by Prudential, and in turn any medical professional hired by any of those third-party vendors to review evidence in Plaintiff's claim, operated under a conflict of interest due to their extensive business relationship with Prudential and their relationship with the disability insurance industry in general.

157. Prudential's third-party vendor(s) and its reviewing medical professional's (Dr. Guernelli) conflicts of interest as referenced herein, tainted Dr. Guernelli's opinions and resulted in his biased, adverse opinions against Plaintiff which formed the basis of Prudential's unlawful and implausible decision to unreasonably deny her claim.

158. Even if Prudential's Policy contains discretionary language, the standard of review should be *de novo* because Prudential's numerous ERISA procedural and other violations as set forth herein are so egregious they warrant *de novo* review.

159. As a direct result of Prudential's decision to terminate, and then later deny Plaintiff's disability claim, she has been substantially injured and suffered damages in the form of lost LTD benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from Prudential, the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter.

160. Upon information and belief, Plaintiff alleges other potential non-disability employee benefits she may be entitled to include, but are not be limited to, health insurance

benefits and coverage, and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and the waiver of any premium(s) due on a life insurance policy which may provide coverage for her and her family/dependents.

161.    Plaintiff seeks any and all employee benefits, including but not limited to disability benefits and any other benefits she may be entitled to and due from the Defendants as a result of being found disabled in this matter.

162.    Pursuant to 29 U.S.C. § 1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

163.    Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. § 20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order admitting/supplementing the evidence into the claim file (i.e. the Administrative Record) that Plaintiff submitted to Prudential following its final denial;

B.    For an Order finding that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that she met the "Regular Occupation" definition of disability set forth in the relevant Plan and/or Policy, and she is entitled to those disability benefits, and any other non-disability employee benefits as a result of the Order, from the date she was first entitled to these benefits but denied them, through the date of judgment with prejudgment interest thereon;

C.    For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

D.    Assuming the issue is ripe before the Court (i.e. the Policy's 24 month "Regular Occupation" definition of disability timeframe has expired), Plaintiff seeks an Order finding

-29-

that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that she met and continues to meet the "Any Gainful Occupation" definition of disability set forth in the relevant Plan and/or Policy, and she is entitled to these LTD benefits from the date she was first eligible for them through the date of the Order with pre-judgment interest thereon;

E.     Assuming the issue is ripe before the Court and the Court issues an Order finding that Plaintiff meets the "Any Gainful Occupation" definition of disability in the Plan and/or  Policy, she seeks an Order that Defendants must continue paying these LTD benefits and any other non-disability employee benefits she is entitled to as a result of that Order, until such a time as she meets the conditions for the termination of these benefits;

F.     Alternatively, if the Court determines that the evidence in Plaintiff's claim file (i.e. Administrative Record) is sufficient to prove that Plaintiff met the "Regular Occupation" definition of disability in the Plan and/or the Policy for the entire duration of that definition of disability's timeframe, but is unable to make an "Any Gainful Occupation" determination for any reason, she then seeks an Order remanding her claim to Prudential to include Ordering that all of the evidence Plaintiff submitted to Prudential is admitted to the claim file (i.e. Administrative Record), and Prudential must consider this evidence in its review to determine whether she meets the "Any Gainful Occupation" definition of disability in the Plan and/or Policy and is entitled to those benefits;

G.     In the event the Court is unable to render a decision as to whether Plaintiff is entitled to any LTD benefits from Prudential for any reason, or in the event the Court determines that Prudential should re-open her claim and consider the evidence Plaintiff submitted following Prudential's final denial, in addition to the evidence that was in her claim file on the day of its final denial, she seeks an Order remanding her claim to Prudential for it to admit all of Plaintiff's evidence to the claim file (i.e. Administrative Record) as part of its

1   determination as to whether she meets the relevant definition of disability and is entitled to

2   benefits in a matter consistent with the Order;

3          H.      For attorney's fees and costs incurred as a result of prosecuting this suit

4   pursuant to 29 U.S.C. § 1132(g); and

5          I.      For such other and further relief as the Court deems just and proper.

6                          DATED this 11th day of February, 2020.

7   SCOTT E. DAVIS, P.C                        SCOTT M. HARRIS, P.C.

8   By:     /s/ *Scott E. Davis, Esq.*          By:     /s/ *Scott M. Harris, Esq.*
            Scott E. Davis                              Scott M. Harris
9           Attorney for Plaintiff                      Attorney for Plaintiff

-31-